| | | |
|---|---|---|
| **GENESIS OFFICE SYSTEMS, INC.** | \* | IN THE |
| 3rd Floor — Suite 300 | \* | |
| 1701 Madison Avenue | \* | UNITED STATES |
| Baltimore, Maryland 21217 | \* | |
| | \* | DISTRICT COURT |
| Plaintiff, | \* | |
| vs. | \* | FOR THE |
| | \* | |
| **GESTETNER/SAVIN CORPORATION** | \* | SOUTHERN DISTRICT |
| Southpointe Industrial Park | \* | |
| 171 Hillpointe Drive | \* | OF NEW YORK |
| Canonsburg, Pennsylvania 15317 | \* | |
| | \* | |
| & | \* | |
| | \* | |
| **RICOH CORPORATION** | \* | |
| Five Dedrick Place | \* | |
| West Caldwell, New Jersey 07006 | \* | |
| | \* | |
| & | \* | |
| | \* | |
| **ADVANCE BUSINESS SYSTEMS** | \* | |
| 10755 York Road | \* | 07 cv 3682 (Chin) |
| Cockeysville, Maryland 21030 | \* | |
| | \* | "ECF CASE" |
| Defendants. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT
**Breach of Contracts & Tort**

TO THE HONORABLE, THE JUDGE OF SAID COURT:

GENESIS OFFICE SYSTEMS, INC. (hereinafter "Genesis"), Plaintiff, by Ms. Angelyn D. Johnson and Rev. Rickey Nelson Jones, attorneys, respectfully represents unto Your Honor:

1. That Genesis is a Maryland Corporation dealing in the sales and service of copy machines, duplicators (high volume copiers), fax machines, office equipment, etc.

2. That Defendants Gestetner/Savin Corporation (hereinafter "GS") and Ricoh

Corporation (hereinafter "Ricoh") are corporations supplying copy machines, duplicators, fax machines, office equipment, etc. to various dealers and sellers, including dealers in the state of Maryland.

3. That Defendant Advance Business Systems (hereinafter "Advance") is a Maryland Corporation dealing in the sales and service of copy machines, duplicators, office equipment, etc.

4. That after suing GS, Ricoh, and Advance in a Maryland Circuit Court, the case was dismissed without prejudice to be re-filed in New York pursuant to a Forum Selection Clause in the parties' agreement.

## Breach of Contract by GS

5. Genesis was a stellar dealer for GS for over fifteen years, never being notified of any problems, complaints, or failures.

6. Following the merger of Gestetner Corporation into Savin Corporation, Genesis received a letter dated June 23, 1998 indicating it would no longer be supplied with Gestetner products, effectively breaching its contract and threatening Genesis as a corporation. Exhibit "A-1".   The letter also indicated the termination would take effect in three days.

7. After writing Savin Corporation and outlining its existing contract with Gestetner, and how breaching such would tremendously jeopardize its numerous contracts with other companies it is obligated to provide products and services to (e.g., Baltimore Gas & Electric), GS decided to refrain from acting and meet with Genesis.   Exhibit "A-2"

8. In 1999, GS met with Genesis to persuade it to abandon its Baltimore territory for sales and service, not honor their agreement.

9. GS offered other territories to Genesis and even offered Genesis $50,000.00 credit.  GS sought to get Genesis to abandon its Baltimore territory, in writing, in order to give such territory

to another dealer, namely, Advance.  Exhibit "B"

10. Genesis declined GS's offer to abandon the Baltimore territory and refused to sign any documents purporting to indicate such.  However, to keep harmony, Genesis did accept the additional territories offered and the $50,000.00 credit given for accepting them.

11. In declining to abandon the Baltimore territory, Genesis made it clear to GS that it had many customers, contacts, and contracts in the Baltimore territory, established over the course of approximately two decades.

12. Genesis' Dealer Agreement with GS (Exhibit "C") provided that GS could appoint other retailers in Genesis' territory but such would **"not operate as a termination or cancellation of this Agreement."** (Page 2, paragraph #2)

13. According to the Dealer Agreement, it expired by its terms on October 31, 2003

> *"provided, however, that in the absence of a replacement agreement, Savin and Dealer may agree in writing to continue their relationship on a month-to-month basis pursuant to the terms and conditions of this Agreement as in effect on December 12, 2002, until the earlier to occur of:*
> *(i) Dealer's notification in writing of its intention to discontinue its relationship with Savin.*
> *(ii) the acceptance and subsequent execution by Savin and Dealer of a successor Dealer Agreement; or*
> *(iii) the provision, by Savin, of 30 days prior written notice that this Agreement (as extended) shall expire at the end of such 30-day period."* (Paragraph 9[e] of Dealer Agreement)

14. On October 31, 2003, Genesis and GS **did not** enter a written month-to-month agreement to continue their relationship pursuant to the terms of the Dealer Agreement.

15. However, Genesis and GS did agree to continue doing business (i.e., sales and service of GS products), establishing a new contract without limitation (with the old as only a guide).

16. Genesis continued to sale and service GS's products in its Baltimore territory, as well as the new territories given to the company by GS, for months.  Genesis also leased a building in one of the new territories in order to sale GS's products, with GS's knowledge and approval.

17. By letter dated March 24, 2004, Genesis received notice from GS seeking to terminate their professional relationship after twenty years because of Genesis' refusal to abandon its Baltimore territory for the benefit of Advance.  Exhibit "D"

18. Genesis' attorney wrote GS a letter explaining the inappropriateness of their attempt to terminate their twenty year professional relationship in order to give Advance Genesis' territory and business inconsistent with the very agreement they cite.

19. GS's attorneys responded to the letter by denying they are doing anything wrong and maintaining that the professional relationship is terminated, effective May 24, 2004.

## Breach of Contract by Ricoh

20. Plaintiff Genesis adopts by reference the allegations contained in paragraphs 1 through 19 of this Complaint with the same effect as if herein fully set forth.

21. Genesis had also been an authorized dealer with Ricoh Corporation for over a decade.

22. Key officials in GS occupy vital positions with Ricoh even though they are separate corporations.

23. Pursuant to the terms of the Dealer Agreement with Ricoh, it terminated by its terms on March 31, 2004. Exhibit "E"

24. Ricoh and Genesis continued the professional relationship in full.

25. For months, Genesis continued to sale and service Ricoh products in its territories.

26. Despite no contractual or dealership problems with Ricoh whatsoever, by letter dated April 30, 2004, Ricoh notified Genesis of its intention to terminate their professional relationship by June 30, 2004 (See. Exhibit "F").

27. Due to GS's decision to terminate Genesis' dealership for the benefit of Advance and the commonality of personnel in Ricoh and GS, the Dealer Agreement's prohibition on terminating such agreements when other companies are permitted to sell in territories previously allotted to another would be violated by Ricoh on June 30, 2004.

28. Ricoh's desire to make Advance the sole dealer in Baltimore and its desire to "hand over" all the business built up by Genesis over the course of two decades produced a breach of contract on June 30, 2004, under the guise of termination of the parties' automatic month-to-month agreement.

29. The unified effort of GS and Ricoh to "give" the Baltimore territory to Advance, along with the business established by Genesis, has effectively ignored the parties' contract and threatened Genesis as a company.

30. GS and Ricoh have also ignored the expenses and liability Genesis faces in the numerous contracts entered to [i] lease property and [ii] service their products.

31. The combined efforts of GS and Ricoh to "kill" Genesis as a company caused substantial losses.

**WHEREFORE**, Plaintiff Genesis demands judgment against Defendants GS and Ricoh as follows:

[A]    Defendant GS be enjoined from terminating its professional relationship with Genesis

(i.e., maintain Dealership Agreement with Genesis);

[B]  Defendant Ricoh be enjoined from terminating its professional relationship with Genesis (i.e., maintain Dealership Agreement with Genesis);

[C]  Defendants GS and Ricoh indemnify Genesis from all lawsuits, loses, costs, fines, judgments, etc. which arise due to the interference with Genesis' business, and

[D]  Defendants GS and Ricoh pay compensatory damages to Genesis of two hundred thousand dollars ($200,000.00), with interest and costs, for interfering with Genesis' business half way through its sales year and causing Genesis to lose guaranteed sales and business.

OR ALTERNATIVELY,

[I]  Defendant GS be found liable for compensatory damages of eight million three hundred forty five thousand seven hundred twenty dollars ($8,345,720), with interest and costs, representing the next twenty years[1] of business Genesis would generate based on its most recent sales figures with such products for 2001 and 2002;

[II]  Defendant Ricoh be found liable for compensatory damages of four million one hundred seventy two thousand eight hundred sixty dollars ($4,172,860), with interest and costs, representing the next ten years[2] of business Genesis would generate based on its most recent sales figures with such products for 2001 and 2002, and

[III]  Defendant GS and Ricoh indemnify Genesis from all lawsuits, costs, fines, judgments, etc. due to obligations undertaken by Genesis for the benefit of Defendants' products.

---

[1] Genesis has been a dealer with GS for twenty years.

[2] Genesis has been a dealer with Ricoh for ten years.

## Tortious Interference With Prospective Advantage

32. Plaintiff Genesis adopts by reference the allegations contained in paragraphs 1 through 31 of this Complaint with the same effect as if herein fully set forth.

33. During or around 1999, Advance sought to acquire the Baltimore territory from Genesis and entered agreement(s) with GS and/or Ricoh to that end.

34. In 1999, GS met with Genesis in order to effectuate its agreement(s) with Advance, seeking to get Genesis to abandon the Baltimore territory in total.   Exhibit "B"

35. Unsuccessful, GS threatened Genesis with termination of its dealership.

36. After Genesis' Baltimore customers continuously turned to the company for sales and service, Advance directed GS to exclude Genesis from the Baltimore territory.

37. In an effort to appease Advance, GS and Ricoh forwarded letters to Genesis indicating the termination of Genesis' dealerships with the companies.   Exhibits "D" & "F"

38. Advance intentionally and improperly sought to exclude Genesis from the Baltimore territory and Baltimore business Genesis had built up over two decades.

39. Advance made agreements with GS and/or Ricoh to further its goal of acquiring the Baltimore territory and Baltimore business, to the exclusion of Genesis.

40. Advance improperly interfered with Genesis' Dealership Agreements by causing GS and Ricoh to terminate Genesis' dealerships even though nothing occurred in the relationship in twenty years to warrant termination.

**WHEREFORE,** Plaintiff Genesis demands judgment against Advance in the amount of two hundred thousand dollars ($200,000.00) in compensatory damages and one million dollars ($1,000,000.00) in punitive damages, with interest and costs.

*I solemnly affirm, under the penalty of perjury and upon personal knowledge, that the contents of the foregoing paper are true.*

                                                *Ron Hawkins, CEO Genesis Office Systems, Inc.*

Respectfully submitted,

Angelyn D. Johnson
Law Office of Angelyn D. Johnson, Esq.
26 Court Street, Suite 1812
Brooklyn, New York 11242
(718) 875-2145
*SDNY Bar#: 2151439*


Rev. Rickey Nelson Jones
Law Offices of Reverend Rickey Nelson Jones, Esq.
3rd Floor — Suite 5
1701 Madison Avenue
Baltimore, Maryland 21217
(410) 462-5800
*Pro Hac Vice Counsel*

**ATTORNEYS  FOR  PLAINTIFF**

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

---

Angelyn D. Johnson
Law Office of Angelyn D. Johnson, Esq.
26 Court Street, Suite 1812
Brooklyn, New York 11242
(718) 875-2145
*SDNY Bar#: 2151439*

---

Rev. Rickey Nelson Jones
Law Offices of Reverend Rickey Nelson Jones,
     Esq.
3rd Floor — Suite 5
1701 Madison Avenue
Baltimore, Maryland 21217
(410) 462-5800
*Pro Hac Vice Counsel*


**ATTORNEYS FOR PLAINTIFF**