UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GENESIS OFFICE SYSTEMS, INC.

                Plaintiff,

- against -

GESTETNER/SAVIN CORPORATION, RICOH CORPORATION AND ADVANCE BUSINESS SYSTEMS

                Defendants.

Index No. 07 CV 3682 (DC)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

---

      Defendants Gestetner/Savin Corporation ("Savin"), Ricoh Corporation ("Ricoh") and Advance Business Systems ("Advance") (together, "Defendants"), by their attorneys, Anderson Kill & Olick, P.C., hereby submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint of Plaintiff Genesis Office Systems, Inc. ("Plaintiff" or "Genesis") pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.[1]

      As set forth in the Rule 7.1 Statement filed by defendants, Savin Corporation, evidently sued incorrectly as Gestetner/Savin Corporation, was previously merged into Ricoh Corporation. The name of Ricoh Corporation has been changed to Ricoh Americas Corporation. Insofar as Plaintiff had entered into contracts separately with Savin Corporation and Ricoh Corporation, those conventions are used below to distinguish the descriptions of those agreements.

---

[1] The Complaint is attached as Exhibit "A" to the accompanying affidavit of Mark L. Weyman, sworn to September 7, 2007 ("Weyman Aff.").

## **PRELIMINARY STATEMENT**

This case continues litigation first brought by Plaintiff in Maryland in 2004 challenging the termination of its Dealer Agreements with both Savin and Ricoh. The Maryland action was dismissed based primarily on forum-selection clauses in the relevant agreements. Plaintiff has now reasserted its breach of contract claims against Savin and Ricoh respectively and a tortious interference claim against Advance. Each of the claims is without merit and should be dismissed.

The action centers upon whether Savin and Ricoh were within their respective rights to terminate their business relationship with Plaintiff. As described more fully below, in each instance a Dealer Agreement governed the relationships with Plaintiff. Each agreement had expired by its own terms before Plaintiff was terminated as a dealer. In one instance (Ricoh), the agreement by its terms extended on a month-to-month basis until notice of termination was given. In the other (Savin), there was no automatic extension although the parties continued to do business after the termination date of the agreement until notice of termination was given and effective.

In neither instance did Plaintiff have exclusivity in its territory. To the contrary, each agreement was explicit in that regard. As described below, each agreement provided, however, that the appointment of an additional dealer in the territory would not serve to cancel or terminate the contract with Plaintiff. Defendant Advance was another dealer in the territory which Plaintiff was aware of for some six years before it was terminated. The core of each of Plaintiff's claims is its allegation that the appointment of Advance as a dealer served to terminate Plaintiff's agreements in violation of the terms thereof. These contentions stand logic on its head and are completely inconsistent with the plain terms of the agreements and the facts plead by Plaintiff. Accordingly, Plaintiff fails to state a claim for relief.

## **FACTUAL ALLEGATIONS**

I.  **Genesis' Agreement with Ricoh**

Plaintiff entered into a Dealer Sales Agreement with Ricoh in September 2002 (the "Ricoh Agreement"). See Weyman Aff, Exhibit "B". Pursuant to the Ricoh Agreement, Plaintiff was afforded the right to be an authorized retailer for certain types of Ricoh brand office equipment. See Weyman Aff., Exhibit "B". As conceded by Plaintiff, the term of the Ricoh Agreement expired on March 31, 2004. Complaint at ¶ 23. There is no allegation that Ricoh breached the Ricoh Agreement at any time prior to March 31, 2004. Although the Ricoh Agreement would have continued automatically on a month-to-month basis, the Ricoh Agreement plainly stated that Ricoh could terminate the relationship if it afforded Plaintiff 60 days written notice. Specifically, Plaintiff agreed:

> 15.4   In the event this Agreement shall have expired by its terms on March 31, 2004 but neither RICOH nor Dealer shall have notified the other in writing of their intention to discontinue the relationship, then, in such event, this Agreement shall automatically continue in full force and effect on a month-to-month basis and on the same terms and conditions in effect on March 31, 2004 until the earlier of:
>
> (a)   Dealer's notification to RICOH as is provided in Section 5.1;
>
> (b)   The mutual acceptance and subsequent execution and delivery of a successor Office Products Retail Dealer Sales Agreement (or similar document) memorializing the agreement of the parties; or
>
> (c)   The provision, by RICOH, of at least sixty (60) days prior written notice, to the effect that RICOH, in its discretion and sole judgment has determined that it shall not offer Dealer a successor Office Products Retail Dealer Sales Agreement but shall allow the existing agreement (as extended) to expire on the last day of the second (2d) month immediately following the month in which the RICOH notice is provided.

See Weyman Aff., Exhibit "B".

Plaintiff concedes that, "by letter dated April 30, 2004, Ricoh notified Genesis of its intention to terminate their professional relationship by June 30, 2004." Complaint at ¶ 26. Plaintiff contends, however, that Ricoh's decision - - which it had the right to make "in its discretion and sole judgment" - - to terminate its relationship pursuant to Section 15.4(c) of the Ricoh Agreement somehow constitutes a breach of the Ricoh Agreement.

In essence, Plaintiff contends that it was the appointment of Advance, and not the April 30, 2004 letter, which it admits it received (Complaint ¶ 26), that served to terminate its rights under the Ricoh Agreement. It then attempts to use the provisions of the contract making clear that its appointment was non-exclusive (Section 1) to contend that its termination breached the agreement. The terms of the Ricoh Agreement, however, make clear that Plaintiff cannot state a claim on such a basis.

## II.    Genesis' Agreement with Savin

Plaintiff entered into a Dealer Agreement with Savin on December 12, 2002 (the "Savin Agreement"). See Weyman Aff., Exhibit "C". Pursuant to the Savin Agreement, Plaintiff was afforded the right to be an authorized retailer for certain types of Savin brand office equipment. Id. By its own terms, the Savin Agreement expired on October 31, 2003. Complaint at ¶ 13. The Savin Agreement did not contain a provision for the automatic month-to- month agreement after its expiration. In fact, the Savin Agreement instead required that any month-to-month extension must be in writing. Complaint at ¶ 13. Specifically, Plaintiff agreed:

> 9.    Termination
>
> (e)    This Agreement shall expire by its terms on October 31, 2003; provided, however, that in the absence of a replacement agreement, Savin and Dealer may agree in writing to continue their relationship on a month-to-month basis pursuant to the terms and

> conditions of this Agreement as in effect on December 12, 2002, until the earlier to occur of:
>
> > (i) Dealer's notification in writing of its intention to discontinue its relationship with Savin.
> >
> > (ii) the acceptance and subsequent execution by Savin and Dealer of a successor Dealer Agreement; or
> >
> > (iii) the provision, by Savin, of 30 days written notice that this Agreement (as extended) shall expire at the end of such 30 day period.

See Weyman Aff., Exhibit "C".

As alleged by Genesis, on October 31, 2003, the Savin Agreement terminated by its own terms. Complaint at ¶ 13. Plaintiff admits that Plaintiff and Savin "**did not** enter a written month-to-month agreement to continue their relationship pursuant to the terms of the Dealer Agreement." Complaint at ¶ 14 (emphasis in original). The Complaint is devoid of any allegation that Savin breached the Savin Agreement at any time prior to its expiration on October 31, 2003. Accordingly, based on Plaintiff's allegations, Savin did not breach the Savin Agreement.

To the extent that Savin and the Plaintiff continued to do business after the expiration date, that too came to an end. By letter dated March 24, 2004, Savin notified Plaintiff that Savin would no longer conduct business with Plaintiff and, thus, terminated the relationship with Plaintiff. Complaint, Ex. "D". Nevertheless as with Ricoh, Plaintiff contends that Savin's decision to terminate its relationship with Plaintiff somehow constitutes a breach of the Savin Agreement. For the very same reasons, this contention is baseless and does not state a claim.

### III. Advance Was A Competitor.

Plaintiff alleges that Savin and Ricoh terminated their contracts with it to benefit Advance. See Complaint, ¶¶ 27-28. The terminations were each effective in

2004 and took place after the original expiration dates of the respective agreements. Plaintiff attempts to argue that the terminations were a result of the appointment of Advance - - which it claims would breach the respective agreements - - not as a result of the notices of termination. Plaintiff admits, however, that it was aware of Advance and its rights in the territory at least as early as 1998. See Complaint, Exhibit A-2, letter dated July 24, 1998 from Ron Hawkins, C.E.O. of Genesis, p.2. Despite the fact that Plaintiff was competing in the territory with Advance for approximately six years before its rights were terminated, and entered into the agreements at issue after it knew of Advance, it contends that it was the appointment of Advance, rather than the letters providing notice of termination, that served as the termination of its relationships. This contention by Plaintiff ignores the plain language of the agreements and the facts it otherwise alleges.

## ARGUMENT

### I. GENESIS' BREACH OF CONTRACT CLAIMS FAIL TO STATE A CLAIM AGAINST EITHER SAVIN OR RICOH

It is axiomatic that to sustain a claim for breach of contract under New York law[2], like those alleged against Savin and Ricoh, the claimant must (1) establish that a contract existed, and (2) identify how the contract was breached. Terwilliger v. Terwilliger, 206 F.3d 240, 245-246 (2d Cir. 2000). "When pleading those elements, a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue." Wolff v. Rare Medium, Inc., 210 F. Supp.2d 490, 494 (S.D.N.Y. 2002); Lupinski v. Village of Illion, 399 N.Y.S.2d 956 (4th App. Div. 1977) ("Where a

---

[2] The Agreements between Plaintiff on the one hand, and Ricoh and Savin on the other, plainly and unambiguously provide that New York law is to apply. See Savin Agreement, ¶ 13(d) (this Agreement "...shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements wholly executed and performed in New York.") and Ricoh Agreement, Section 18.1 ("this Agreement ...shall be governed by and interpreted in accordance with the laws of the State of New York."). See Weyman Aff., Exhibits "B" and "C".

complaint...sets forth a cause of action for breach of contract, the provisions of the contract upon which the claim is based must be alleged.") Genesis' Complaint fails to plead facts sufficient to support its claims of breach of contract.

In fact, the allegations in the Complaint indisputably establish that neither of the two Dealer Agreements at issue were breached. The Savin Agreement expired, by its own terms, on October 31, 2003 and the Ricoh Agreement expired, by its own terms, on March 31, 2004. Complaint at ¶¶ 13, 23. There is no allegation that Savin or Ricoh breached these Agreements at any time prior to their expiration.

Plaintiff contends, however, that the respective provisions in the agreements concerning the non-exclusivity of Plaintiff's appointment as a Dealer somehow are implicated here. In a twist of logic, and by ignoring its admissions, Plaintiff contends that its termination as a Dealer violated the contract term which provides that an appointment of another Dealer in the same territory would not act as a termination of the contract. Referring to the non-exclusivity of the appointment of Plaintiff and the right of Ricoh to appoint other dealers in the territory, the Ricoh Agreement provided that:

> Any such additional appointments shall not operate as a diminution, termination or cancellation of this Agreement.

Ricoh Agreement, Section 1.1. Similarly, the Savin Agreement provided:

> Any such appointments shall not operate as a termination or cancellation of this Agreement.

Savin Agreement, Section 2.

Plaintiff's allegations regarding these provisions do not, however, give rise to a claim for breach of contract because the appointment of Advance did not operate to terminate or cancel either agreement. Indeed, as Plaintiff admits, Advance became a Dealer as early as 1998. See Complaint, Ex. A-2. For some six years, both Plaintiff

and Advance were competitors in Plaintiff's territory and Plaintiff entered into the agreements at issue after it was aware of Advance. It was not the appointment of Advance that caused the termination of Plaintiff, rather, the written notices sent pursuant to the terms of the contracts terminated the agreements with Plaintiff.

As Plaintiff has failed to allege facts sufficient to demonstrate that Savin or Ricoh breached any contract, the first two claims of the Complaint alleging Breach of Contract by Savin and Breach of Contract by Ricoh should be dismissed.[3]

## II. GENESIS' TORTIOUS INTERFERENCE CLAIM AGAINST ADVANCE FAILS TO STATE A CLAIM

The tortious interference allegations also fail to state properly a claim against Advance. Under Maryland law, which applies to this claim, the only two recognized types of tort actions for interference with business relationships are (1) "inducing the breach of an existing contract," or (2) "more broadly, maliciously or wrongfully interfering with economic relationships in the absence of breach of contract." K&K Mgmt., Inc. v. Lee, 557 A.2d 965, 973 (Md. 1989) (quoting Natural Design, Inc. v. The Rouse Co., 485 A.2d 663, 674 (Md. 1984)).

Plaintiff fails to plead properly either such claim. First, the facts alleged do not state a *prima facie* case that any existing contract was breached. To the contrary, the sworn factual allegations of the Complaint make it clear that the parties to the contracts fully performed their obligations.

Moreover, as a matter of law, terminating an at-will contract does not constitute a breach. See Lubore v. RPM Associates, Inc., 109 Md. App. 312 (1996), In that case, the Court of Special Appeals affirmed the dismissal of a breach-of-contract

---

[3] To the extent that the Court does not otherwise dismiss the Complaint, it should nevertheless dismiss the jury demand as both the Ricoh Agreement (Section 18.1) and the Savin Agreement (Section 13(d)) waive the right to a jury trial.

claim concerning an at-will employment agreement holding that the employers "were legally entitled to terminate the contract at any time (and therefore did not breach it because it was an at-will contract. Id. at 324.

Here, it is undisputed that the Savin and Ricoh Agreements had each expired by their terms and that, at most, were month-to-month agreements terminable at will by Savin and Ricoh, respectively, with proper notice. Plaintiff admits to receiving the requisite notices. See Complaint at ¶¶ 17-19, 26. Under the teaching of Lubore, the facts alleged in the complaint, therefore, fail to state a claim for tortiously inducing a breach of contract.

Moreover, Plaintiff has not alleged any independently unlawful or wrongful act by Advance, either to induce the termination of a contract or to induce Savin or Ricoh not to enter into a prospective contract with Plaintiff. To state a claim for the second type of tortious interference – interference with prospective advantage, Genesis would have to allege facts that show Advance committed an independently tortious act – a wrongful act – in an effort to interfere. Kaser v. Financial Protection Marketincg, Inc., 376 Md. 621, 628-629 (2003). There are no such allegations. The Complaint only alleges a general conclusory allegation that Advance "directed" Savin to exclude Plaintiff from the Baltimore territory. See Complaint at ¶ 36. Indeed, in affirming the dismissal of the first action by Plaintiff, the Court of Special Appeals of Maryland stated, "there are not facts alleged to establish that Advance interfered with a contract that had already been performed. Thus, the Complaint failed to state a claim against Advance for inducing such a breach." See Weyman Aff., Exhibit "D". Plaintiff therefore fails to state a case for tortious interference with a prospective contract.

As Plaintiff has failed to allege facts sufficient to demonstrate that Advance tortiously interfered with any contract, the third claim of the Complaint alleging Tortious Interference with Prospective Advantage also should be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant their motion to dismiss and dismiss the Complaint in its entirety and grant such other and further relief as is just and proper.

Dated: New York, New York  
September 7, 2007

ANDERSON KILL & OLICK, P.C.

By: _____  
Mark L. Weyman, Esq.  
Anderson Kill & Olick, P.C.  
1251 Avenue of the Americas  
New York, NY 10020-1182  
212-278-1852

*Attorneys for Defendants*