| | | |
|---|---|---|
| **GENESIS OFFICE SYSTEMS, INC.** | * | IN THE |
| | * | UNITED STATES |
| Plaintiff, | * | DISTRICT COURT |
| | * | FOR |
| vs. | * | SOUTHERN DISTRICT |
| | * | OF NEW YORK |
| **GESTETNER/SAVIN CORPORATION** | * | |
| **ET AL.** | * | |
| | * | CASE NO.: 07 CV 3682 |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S RESPONSE (& MEMORANDUM OF LAW) TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT & CROSS MOTION FOR SUMMARY JUDGMENT**

Genesis Office Systems, Inc., Plaintiff, by and through its counsel, Rev. Rickey Nelson Jones, responds to Defendants' motion to dismiss and cross moves for summary judgment as follows:

**FACTS (Exhibit "A")**

For nearly two decades, Plaintiff had a professional relationship with Defendants Gestetner Corporation and Savin Corporation (hereinafter "GS").[1]  It also had a professional relationship with Ricoh Corporation (hereinafter "Ricoh") for over ten years. The professional relationship was contractual and entailed the sales and service of their products in the Baltimore Territory.  Plaintiff's employees were trained by GS and Ricoh and millions of dollars in product sales were made by Plaintiff for them.

On June 20, 1998, another Dealer, namely Defendant Advance Business Systems (hereinafter "Advance"), sent out a notice in the Baltimore Territory indicating its merger

---

[1] Gestetner Corporation and Savin Corporation merged on April 1, 1998.

2

with GS (Exhibit "B-i").[2]  Three days later (June 23, 1998), Plaintiff was notified of the termination of its Dealer Agreement with GS (Exhibit "B-ii"), despite the fact that specific contractual language prohibits terminating Plaintiff's Dealer Agreement after appointing another Dealer in the same territory (Complaint Exhibit "C", page 2, paragraph 2).  This letter constituted an indisputable breach of contract (to benefit Advance), which Plaintiff never excused.  After Plaintiff complained, GS met with Plaintiff to persuade it to abandon its Baltimore Territory so Advance could have an exclusive, something GS and Ricoh's Maryland Counsel admitted was to occur (Exhibit "C", i.e., an excerpt from the Circuit Court Hearing in Maryland in 2004).  Giving an exclusive to Advance <u>had to</u> produce termination of the Dealership Agreements with Plaintiff, either immediately or in the not-too-distant future (Exhibit "D").  When Plaintiff would not be persuaded to abandon the Baltimore Territory, GS and Ricoh decided to "buy time" by entering other agreements with Plaintiff which were "dead-on-arrival" since the Defendants intended (and did) let them expire without the customary renewal, finally accomplishing their objective of giving Advance an exclusive in the Baltimore Territory.  Advance's present exclusive in the Baltimore Territory is a fact admitted in pleadings by GS and Ricoh's Maryland Counsel (Exhibit "D").  This **inclusion** of Advance in the territory and **exclusion** of Plaintiff was decided in 1998 and professionally/physically accomplished a few years later.

---

[2] GS eventually merged with Ricoh according to Defendants' Memorandum of Law.

3

**ARGUMENT**

Defendants have understandably argued that expired contracts cannot be breached. Hence, they argue, the Complaint fails to state a cause of action and Advance cannot be liable for tortious interference. If Plaintiff did not have documents to establish [1] GS and Ricoh's clear intent to give Advance an exclusive in the Baltimore Territory, [2] GS and Ricoh's clear attempt to "persuade" Plaintiff to abandon the Baltimore Territory for that purpose, and [3] GS and Ricoh's admissions in pleadings and open court that they discussed giving Advance an exclusive while still doing contractual business with Genesis (and did in fact give Advance an exclusive), it would be impossible for Plaintiff to prove its case of breach of contract. However, Plaintiff has documented evidence to show intent and execution of the breach of contract. Defendants' reliance on "Expired Contracts" overlooks (and hopes the court will overlook) the Breach of Contract preceding expiration.

In <u>Terwilliger v. Terwilliger</u>, 206 F.3d 240 (2d Cir. 2000), the court held, inter alia, that when company officials sign an agreement to secure a retiring official's majority shares of stock, guaranteeing payments to the retiree on behalf of the company and signing such agreement individually, they are obligated individually even if the retiree settles his claims with the company via a Stipulation in Bankruptcy. The court also said the following about New York Contract Law,

> Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal

language they have employed.*(Citations Omitted).* Construing an unambiguous contract provision is a function of the court, rather than a jury, and matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument. A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case. Further, the entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency. To prevail on a breach of contact claim under New York law, a plaintiff must prove "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."

Terwilliger, 206 at 245 (DISCUSSION: Part II).
**See.**   Breed v. Insurance Co. of North America, 46 N.Y.2d 351, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978); Teitelbaum Holdings, Ltd. V. Gold, 48 N.Y.2d 51; 421 N.Y.S.2d 556, 396 N.E.2d 1029 (1979); Fiore v. Fiore, 46 N.Y.2d 971, 415 N.Y.S.2d 826, 389 N.E.2d 138 (1979); DeVanzo v. Newark Ins. Co., 44 A.D.2s 39;, 353 N.Y.S.2d 29 (2d Dep't 1974), aff'd, 37 N.Y.2d 733, 374 N.Y.S.2d 619, 337 N.E.2d 131 (1975)**.**

### Defendants GS & Ricoh

When Plaintiff entered a professional relationship with GS and Ricoh to sale and service their products, while it understood Defendants were providing a non-exclusive Dealership in the Baltimore Territory, it also understood contractual language gave it assurance that it could not be "kicked out" of that territory because another Dealer was allowed in. Consequently, Plaintiff diligently made customers, contacts, and contracts in the territory, including acquiring Baltimore Gas & Electric as a customer, the main supplier of gas and electric in Baltimore, Maryland. The language providing Plaintiff with assurance reads as follows,

"Savin appoints Dealer as an authorized retail seller of the Products....

5

>Such appointment is not exclusive, and Savin may in its sole discretion, at any time and without cause or notice, market its Products, or appoint other retailers whose primary responsibility may be to market and sell the Products in all or a portion of the Territory.  **Any such additional appointments shall not operate as a termination or cancellation of this Agreement.**"   (emphasis added) (Complaint Exhibit "C")

The unequivocal language here means "If someone else comes in, you will not be kicked out."  However, three days after Advance's announcement to the public about its merger with GS, Plaintiff's Dealership was terminated.  Yes, GS and Ricoh continued doing business with Plaintiff due to its resistance to being "tossed" from the territory.  However, that was intentionally designed to make the "tossing" more secretive and difficult to expose.  Defendants' argument that the agreements simply expired counters the <u>intent of the parties</u> evident from the aforementioned language.  The Defendants intended, with the "additional appointments will not operate as a termination" language, to cause Plaintiff to rely on diligent work in the territory to sale Defendants products would produce loyalty to it despite others retailers coming into the area. By signing the Dealership Agreement, Plaintiff intended to work diligently to establish a solid customer and contact base for product sales without having to worry about getting its Dealership terminated because some other retailer shows up that Defendants are fond of.  This is clear, and the "additional appointments will not operate as a termination" language is

unambiguous.  Granted, the possibility of ending the professional relationship was there, but that does not counter the "additional appointments will not operate as a termination" language.  Why?  While the professional relationship may end at the hands of either party, the key exception is when it ends due to Defendants appointing another retailer in the territory and "tossing" one already there with established customers.  The wisdom of this exception is clear.  It is grossly unfair and senseless business-wise to give a developed, nurtured, thriving territory to one company when another company worked faithfully to create it.  If this was part of the written contract, Plaintiff most certainly would never have agreed to do business with GS and Ricoh.  In fact, GS and Ricoh know this to be the case very well, and hence, they would never (and have not) put such language in the Dealership Agreements (e.g., *"You agree as a dealer to be tossed from the territory, and replaced by another dealer, even though you  developed it and made it successful."*).

In Cruden v. Bank of New York, 957 F.2d 961 (2nd Cir. 1992), this court held, in part, that where a corporation reorganizes and creates another company and its shareholders receive shares of the new company in exchange for their shares with the original corporation, and thereafter, supplemental indentures are entered in which the new company assume the original corporation payment obligations under certain debentures, debentures converted into common stock still obligated the new company since language in the indenture allowed such to obligate the original corporation and **its successors.**  This court said, concerning New York Law, that the entire contract must be considered in

order to avoid an inconsistency. Considering the entire contract herein prohibits all conclusions which permit the Plaintiff agreeing to be "tossed" from a territory for another dealer when the Plaintiff developed it, nurtured it, and "made it a success for Defendants' products" for two decades. It is not the fact that the parties' professional relationship was terminable-at-will that governs; it is the reason behind the termination that governs. Ending the professional relationship with Plaintiff in order to give the Baltimore Territory to another company/dealer is <u>explicitly</u> prohibited in writing by the Dealership Agreement. GS and Ricoh's efforts to conceal their intentions by [1] offers to Plaintiff to leave the Baltimore Territory, [2] giving Plaintiff credit to focus on other territories, and [3] letting the existing agreements "expire", fail to cover up their "injection" of Advance into the Baltimore Territory and "extraction" of Plaintiff from it. It is precisely this that violates the parties' agreements in both intent and substance.

## **<u>Defendant Advance</u>**

Complaint Exhibit "A-1" establishes GS breaching its Dealership Agreement with Plaintiff three days after merging with Advance. Exhibit "C" herein reveals GS and Ricoh's admissions that discussions were occurring with Advance to take over the Baltimore Territory while they were doing contractual business with Plaintiff. Exhibit "D" herein reveals GS and Ricoh's admissions that once their agreements with Plaintiff allegedly "expired," Advance was given an exclusive. Sequentially, [1] Defendants talked about Advance selling in the Baltimore Territory <u>exclusively</u> while under contract

for that territory with Plaintiff; [2] Advance came into the Baltimore Territory; [3] Plaintiff received a letter three days thereafter terminating its Dealership Agreement; [4] Plaintiff was tolerated for a few years due to its resistance, and [5] Advance gets an exclusive in the Baltimore Territory and Plaintiff is "tossed." Defendant Advance discussed, moved on, and took the economic advantages Plaintiff had enjoyed for nearly two decades and would have continued to enjoy. The inappropriateness of what Advance did is hornbook law. The Restatement of Torts tells us the following about Tortious Interference With Prospective Advantage,

> Restatement (Second) of Torts (1979) (Restatement), by dividing into two parts the branch of the tort dealing with existing contracts, concludes that the tort may be committed in three ways.... Section 766B's rule subjects D to liability to P where D "intentionally and improperly interferes with [P's] prospective contractual relation whether the interference consists of (a) inducing or otherwise causing [T] not to enter into or **continue** the prospective relation or (b) preventing [P] from acquiring or **continuing** the prospective relation. *(Emphasis added)*

Restatement of Torts (Second), at 155.

When Advance discussed getting the Baltimore Territory, its intent was clear. When Advance merged with GS and GS informed Plaintiff of the termination of its Dealership, the intent was clear. When GS and Ricoh merged and notified Plaintiff they would not

continue doing business with it, the intent to benefit Advance was clear.  When GS and Ricoh's counsel admitted the exclusive in the Baltimore Territory for Advance, the intent became reality.  The intent of Advance was to get the Baltimore Territory for itself exclusively, regardless of the economic advantages lost by Plaintiff.  Both interferences described by the Restatement of Torts were committed by Advance.  One, due to Advance, GS and Ricoh refused to "continue the prospective relation."  Two, due to Advance, Plaintiff was prevented from "continuing the prospective relation" because according to GS and Ricoh's own attorney, they would suffer substantial harm because of their Dealer Agreements with Advance if Plaintiff was allowed to continue selling their products (Exhibit "D").

## Conclusion

GS and Ricoh's attorney asked a question in open court in Maryland.  He asked, "How do we end our professional relationship with Plaintiff if we cannot let the agreements expire of their own terms?"  The answer is simple.  No agreement can simultaneously be breached and followed.  If the agreement is breached, you cannot look to it afterward and say "We are following it!"  In other words, GS and Ricoh rendered an agreement they wrote "un-follow-able" when they intended and did act contrary to the letter of it.

Plaintiff prevails in this breach of contract claim in New York because it will prove **[1] a contract** (Complaint Exhibits "C & E"), **[2] performance of the contract by**

10

**one party** (Exhibit "A" & un-opposed sworn Complaint statements #5, #21, & #24-#26), **[3] breach by the other party** (Argument & Exhibits Above), and **[4] damages** (Exhibit "A").  Terwilliger v. Terwilliger, 206 F.3d 240 (2d Cir. 2000)

Plaintiff respectfully requests that Defendants' Motion To Dismiss be denied and Plaintiff's Cross Motion for Summary Judgment be granted.


                                                                Respectfully submitted,

                                                                /s/
                                              Rev. Rickey Nelson Jones
Law Offices of Reverend Rickey Nelson Jones, Esquire
3rd Floor — Suite 5
1701 Madison Avenue
Baltimore, Maryland 21217
(410) 462-5800

*Attorney for Plaintiff*

| | | | |
|---|---|---|---|
| **GENESIS OFFICE SYSTEMS, INC.** | * | IN THE | |
| | * | UNITED STATES | |
|     Plaintiff, | * | DISTRICT COURT | |
| | * | FOR | |
| vs. | * | SOUTHERN DISTRICT | |
| | * | OF NEW YORK | |
| **GESTETNER/SAVIN CORPORATION** | * | | |
|     ET AL. | * | | |
| | * | CASE NO.: 07 CV 3682 | |
|     Defendants. | * | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER**

Upon "Plaintiff's Response To Defendants' Motion To Dismiss The Complaint & Cross Motion For Summary Judgment" it is this ___ day of _____, 2007, by the United States District Court for the Eastern District of New York

    ORDERED that

[1]    Defendants' motion to dismiss is DENIED,

[2]    Plaintiff's cross motion for summary judgment is GRANTED, and

[3]    A hearing is scheduled for the _____ day of _____, 20___ for the purpose of determining Plaintiff's damages.


                                                                  JUDGE