UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GENESIS OFFICE SYSTEMS, INC.

                        Plaintiff,

- against -

GESTETNER/SAVIN CORPORATION, RICOH
CORPORATION AND ADVANCE BUSINESS
SYSTEMS

                        Defendants.

Index No. 07 CV 3682 (DC)

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S IMPROPER CROSS-MOTION FOR SUMMARY JUDGMENT**

---

Defendants Gestetner/Savin Corporation ("Savin"), Ricoh Corporation ("Ricoh") and Advance Business Systems ("Advance") (together, "Defendants"), by their attorneys, Anderson Kill & Olick, P.C., hereby submit this Reply in Support of their Motion to Dismiss the Complaint of Plaintiff Genesis Office Systems, Inc. ("Plaintiff" or "Genesis") for failure to state a claim upon which relief can be granted and in Opposition to Plaintiff's Response and Cross-Motion for Summary Judgment, dated October 1, 2007 ("Plaintiff's Response").

## INTRODUCTION

This is a straightforward case concerning the permissible expiration of two unambiguous contracts: the Ricoh Agreement and the Savin Agreement (collectively, the "Dealer Agreements").[1] Plaintiff, Savin and Ricoh had contractual relationships that set forth clear conditions under which those relationships could terminate or expire at will. Savin and Ricoh, in full compliance with the Dealer Agreements, performed for the

---

[1] The Ricoh Agreement and Savin Agreement are defined on pages 3 and 4, respectively, in Defendants' Memorandum of Law in Support of Their Motion to Dismiss, dated September 7, 2007.

entire length of these contracts and, thereafter, elected to terminate their relationships with Plaintiff. Plaintiff has not alleged any breach of either agreement during the respective contract terms.

Instead, Plaintiff's claims are predicated on alleged rights and restrictions that are not present in the Dealer Agreements. Plaintiff ignores the fact that its contracts had designated terms which expired and that it had no right to guaranteed continuation or renewal of either of the Dealer Agreements.

The claims against Advance are equally unfounded. Plaintiff does not allege, as it must, that Advance committed an independently tortious act in an effort to interfere with Plaintiff's economic relationships. Plaintiff's allegations on this point amount to nothing more than conjecture and speculation.

For the reasons stated in Defendants' moving papers and herein, Plaintiff fails to state a claim for relief against Savin, Ricoh and Advance. Accordingly, Defendants' Motion to Dismiss should be granted and Plaintiff's procedurally-improper Cross-Motion for Summary Judgment should be denied.

## I.   Plaintiff Has Not, And Cannot, Demonstrate That Defendants Breached Any Provision of the Dealer Agreements

Plaintiff concedes that the terms of the Savin Agreement expired on October 21, 2003 and that the Ricoh Agreement expired on March 31, 2004. Complaint at ¶¶ 13, 23. The Complaint does not allege that either Ricoh or Savin committed any breach of the Dealer Agreements during the term of such agreements prior to their respective expiration and Plaintiff's Response does not contest this fact. Thus, any allegation that Savin or Ricoh breached the Dealer Agreements must arise from the fact that they elected to terminate, and not renew, their dealer sales contracts with Plaintiff.

Savin and Ricoh were within their rights to discontinue their relationships with Plaintiff at the conclusion of the terms of their respective agreements. The Dealer Agreements did not provide for a contractual relationship between the parties in perpetuity. As a matter of law, therefore, Defendants did not commit any breach of the Dealer Agreements by choosing not to extend the terms of the respective contracts. Notably, Plaintiff does not even attempt to challenge the well-settled case law cited by Defendants on this point.

Since Plaintiff cannot challenge the fact that Defendants did not breach the actual terms of the Dealer Agreements, Plaintiff instead argues that Defendants are in breach of terms that are *not* part of the contracts. Specifically, Plaintiff alleges:

- "[S]pecific contractual language prohibits terminating Plaintiff's Dealer Agreement after appointing another Dealer in the same territory." Plaintiff's Response at 2

- "When Plaintiff entered a professional [non-exclusive] relationship with GS [Savin] and Ricoh to sale [sic] and service their products, ... it also understood contractual language gave it assurance that it could not be 'kicked out' of that territory because another Dealer was allowed in." Plaintiff's Response at 4.

- "Ending the professional relationship with Plaintiff in order to give the Baltimore Territory to another company/dealer is explicitly prohibited in writing by the Dealership Agreement." Plaintiff's Response at 7.

Simply stated, Plaintiff asserts, without support, that the Dealer Agreements essentially granted it an *implicit* right to guaranteed renewal and restricted the right of both Ricoh and Savin to appoint other dealers in the Baltimore territory. These interpretations are baseless.

First, these provisions have no basis in the language of the Dealer Agreements. In addition, and as Plaintiff recognizes in its papers, the law of New York and this Circuit flatly reject the right of a party to either "rewrite, under the guise of

interpretation, a term of the contract when the term is clear and unambiguous, [or] redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." Plaintiff's Response at 3-4, quoting Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000) ("a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed"); Netherby Limited v. Jones Apparel Group, Inc., 2007 WL 1041648, *7 (2d Cir. April 5, 2007) (same). While Plaintiff is correct that "the entire contract must be considered in order to avoid an inconsistency," Plaintiff's Response at 6-7, an inconsistency cannot be created through the retroactive insertion into a contract of non-existent rights and restrictions. Terwilliger, 206 F.3d at 245. To permit Plaintiff's construction would require this Court to redraft, delete and ignore the express contractual language of the Dealer Agreements.

In fact, the relevant provisions of the Dealer Agreements unambiguously demonstrate the fallacy of Plaintiff's interpretation. For example, the Appointment section of the Savin Agreement directly contravenes the interpretation Plaintiff puts forward, providing that:

- Plaintiff is "*an* authorized retail seller"; Savin Agreement § 2

- Plaintiff's "appointment is *not exclusive*"; Savin Agreement § 2

- Savin "may in its sole discretion, at any time and without cause or notice, … appoint other retailers whose primary responsibility may be to market and sell the Products in all or a portion of the [Baltimore] Territory"; Savin Agreement § 2

- If Savin elects to appoint other retailers, "[a]ny such additional appointments shall not operate as a termination or cancellation of this Agreement." Savin Agreement § 2

See Savin Agreement, attached to the Affidavit of Mark L. Weyman, dated September 7, 2007, as Exh. C (emphasis added); see also Ricoh Agreement § 1.1 DEALER'S

NON-EXCLUSIVE APPOINTMENT, attached to the Affidavit of Mark L. Weyman, dated September 7, 2007, as Exh. B (same language).  The Dealer Agreements are equally unambiguous on the right of Savin and Ricoh to terminate and/or allow their contracts with Plaintiff to expire "in its [Ricoh or Savin] discretion and sole judgment."  See Ricoh Agreement § 15.4(c); Savin Agreement § 9(e); see also Defendant's Memorandum of Law in Support of Their Motion to Dismiss at 3-5.

The Dealer Agreements mean exactly what they say.  They do not grant Plaintiff a guaranteed right to renewal and, therefore, Plaintiff cannot bring an action for breach of a right it never had.  Moreover, neither Savin nor Ricoh ever contracted away their right to appoint other dealers.  In short, Defendants took no action that violates any provision of the Dealer Agreements and, therefore, Plaintiff cannot state a viable claim.

## II.     Plaintiff Has Not, And Cannot, Identify Any Independently Tortious Act Committed by Advance

Since no breach of the Dealer Agreements occurred, to recover on a claim for tortious interference, Plaintiff must allege that Advance committed an independent wrongful act to induce the termination of the Ricoh Agreement and/or the expiration of the Savin Agreement.  Yet, as is clear from a reading of the Complaint and as recognized by the Court of Special Appeals of Maryland, no such allegations exist.

Plaintiff already was competing in the same territory with Advance for many years before its rights were terminated.  See Complaint, Exh. A-2, letter dated July 24, 1998, from Ron Hawkins, C.E.O. of Plaintiff-Genesis, p. 2.  In fact, Plaintiff entered into the contracts at issue in 2002, after it was well-aware of Advance's competition in the Baltimore territory.  The mere fact that, in 2004, Ricoh and Savin elected to continue doing business with Advance and discontinue doing business with

Plaintiff, is insufficient evidence on which Plaintiff can maintain its tortious interference claim.

Advance owed no duty to Plaintiff to protect Plaintiff's business relationship with Ricoh and Savin. Compare Martello v. Blue Cross and Blue Shield of Maryland, 143 Md.App. 462, 477, 795 A.2d 185 (Md. Ct. App. 2002) ("The mere fact that Martello might have suffered from EDS's aggressive business tactics would not be enough to constitute the tort [of tortious interference]"), with Plaintiff's Response at 9 ("The intent of Advance was to get the Baltimore Territory for itself exclusively, regardless of the economic advantages lost by Plaintiff."). Moreover, Advance's desire to increase its own business, absent facts not alleged, does not amount to unlawful tortious interference. See Martello, 143 Md.App. at 477 (one recognized ground of "just cause" for damaging another in his business is competition); Macklin v. Robert Logan Associates, 334 Md. 287, 301, 639 A.2d 112 (1994) ("To establish tortious interference with prospective contractual relations, it is necessary to prove both a tortious intent and improper or wrongful conduct."); see also Restatement (Second) of Torts § 768(1)(b) (1977). As explained by the Court of Appeals in Maryland:

> " 'Iron sharpeneth iron' is ancient wisdom, and the law is in accord in favoring free competition, since ordinarily it is essential to the general welfare of society, notwithstanding competition is not altruistic but is fundamentally the play of interest against interest, and so involves the interference of the successful competitor with the interest of his unsuccessful competitor in the matter of their common rivalry. Competition is the state in which men live and is not a tort, unless the nature of the method employed is not justified by public policy, and so supplies the condition to constitute a legal wrong."

Goldman v. Harford Road Building Assn., 150 Md. 677, 684, 133 A. 843 (1926).

### III. Plaintiff's Improper Motion for Summary Judgment Should Be Denied in Whole

Plaintiff's cross-motion for summary judgment is both procedurally and substantively flawed, and should not be heard by the Court. First, Plaintiff filed its cross-motion for summary judgment without first complying with the Court's Individual Practices requiring submission of a letter setting forth the basis for the anticipated motion and requesting the necessary pre-motion conference. See Individual Practices of Judge Denny Chin 2(A). For this reason alone, Plaintiff's Motion for Summary Judgment should be denied.

Additionally, Plaintiff failed to file a Statement of Material Facts pursuant to Local Civil Rule 56.1 ("L.R. 56.1"). L.R. 56.1 mandates that annexed to "any motion for summary judgment" shall be a "short and concise statement, *in numbered paragraphs*, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civil Rule 56.1; Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001) (the purpose of L. R. 56.1 is to streamline a consideration of summary judgment motions by freeing District Courts from the need to hunt through voluminous records without guidance from the moving party). Standing alone, Plaintiff's failure to comply with L.R. 56.1 is procedurally fatal to its cross-motion for summary judgment. See Local Civil Rule 56.1 ("[f]ailure to submit such a statement may constitute grounds for denial of the motion."); see also MSF Holding Ltd. v. Fiduciary Trust Co., Inter., 435 F. Supp. 2d 285, 304-05 (S.D.N.Y. 2006) (denying defendant's motion for summary judgment for failure to submit a L.R. 56.1 statement); Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (court may deny a motion for summary judgment for movant's failure to submit a L.R. 56.1 statement).

In the event that the Court wishes to proceed despite Plaintiff's procedural failures, Plaintiff should be required to comply with both the Court's individual practices — requiring a specific letter and a pre-motion conference — as well as L.R. 56.1 — requiring a compliant L.R. 56.1 statement before Defendants should have to responsd.

Substantively, summary judgment should be denied here because it is wholly premature. Federal Rule of Civil Procedure 56(c) explicitly provides that summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Here, Defendants have yet to serve an answer to the Complaint and no discovery has been had. See Fed. R. Civ. P. 56(c); Vitrano v. U.S., 2007 WL 2850498 (S.D.N.Y. 2007); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (prior to entry of summary judgment, parties should be afforded "adequate time for discovery ... to establish the existence of an element essential to that party's case") (emphasis added); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). Instead, Defendants only have moved to dismiss Plaintiff's facially inadequate complaint.

In the event this Court denies Defendants' motion, Defendants will answer the Complaint and there will be an opportunity for Defendants to conduct discovery regarding Plaintiff's claims. See Affidavit of Mark L. Weyman pursuant to Fed. R. Civ. P. 56(f), dated October 8, 2007. Until that time, summary judgment is inappropriate.

If the Court is going to consider Plaintiff's motion, it should first grant Defendants an opportunity to conduct discovery on Plaintiff's claims. Here, no discovery has been possible and a Rule 16 conference has not yet been had. Further,

Fed. R. Civ. P. Rule 56(f) provides for discovery where necessary to gather additional facts "essential to justify the party's opposition" to a summary judgment motion if the movant "file[s] an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." See Shaheen v. Naughton, 2007 WL 625116, **1 (2d Cir. 2007); Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 573 (2d Cir. 2005) (under Rule 56(f), parties lacking information necessary to oppose a summary judgment motion may seek further discovery); Gualandi v. Adams, 385 F.3d 236, 244-45 (2d Cir. 2004).

Based on the attached Affidavit of Mark L. Weyman pursuant to Federal Rule of Civil Procedure 56(f), Defendants are entitled, at a minimum, to conduct discovery needed to oppose Plaintiff's motion for summary judgment.

If the Court considers Plaintiff's cross-motion for summary judgment now, in adjudicating that motion, "all reasonable inferences must be drawn against the [moving] party," and summary judgment may not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir.2001). It follows that all inferences regarding interpretation of the Dealer Agreements must be read in accordance with Defendants' construction. As such, Plaintiff's "understandings," which exist in the absence of supporting contractual language, must be rejected.

Moreover, the Court should consider the facts that, even after Plaintiff knew of Advance's competition in the Baltimore territory, the alleged breach, Plaintiff continued to do business and signed new contracts with both Ricoh and Savin. Complaint ¶¶ 10, 23-25. For these reasons as well, summary judgment should be

denied.  See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (only if it is apparent that no rational fact-finder "could find in favor of the nonmoving party because the evidence to support its case is so slight" should summary judgment be granted).

## CONCLUSION

For the reasons set forth above and in Defendants' moving papers, Defendants respectfully request that this Court grant their motion to dismiss, dismiss the Complaint in its entirety, deny Plaintiff's cross-motion for summary judgment and grant such other and further relief as is just and proper.

Dated: New York, New York
      October 9, 2007

ANDERSON KILL & OLICK, P.C.

By:   /s/ Mark L. Weyman
     Mark L. Weyman, Esq.
     1251 Avenue of the Americas
     New York, NY  10020-1182
     212-278-1852

*Attorneys for Defendants*