```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/5/2008
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

GENESIS OFFICE SYSTEMS, INC.,          :

            Plaintiff,          :          **MEMORANDUM DECISION**

    - against -                       :          07 Civ. 3682 (DC)

GESTETNER/SAVIN CORP. et al.,          :

            Defendants.          :

- - - - - - - - - - - - - - - - -x

**APPEARANCES:**   LAW OFFICE OF ANGELYN D. JOHNSON, ESQ.
              By: Angelyn D. Johnson, Esq.
           26 Court Street, Suite 1812
           Brooklyn, New York   11242

           - and-

           LAW OFFICES OF REVEREND RICKEY NELSON JONES, ESQ.
              By: Rev. Rickey Nelson Jones, Esq.
           1701 Madison Avenue, 3rd Floor, Suite 5
           Baltimore, Maryland   21217
           Attorneys for Plaintiff

           ANDERSON KILL & OLICK, P.C.
              By: Mark Lee Weyman, Esq.
           1251 Avenue of the Americas
           New York, New York   10020
           Attorneys for Defendants

**CHIN, D.J.**

       Plaintiff Genesis Office Systems, Inc. ("Genesis") brings breach of contract claims against Savin Corp. ("Savin"), sued herein as Gestetner/Savin Corp., and Ricoh Corp. ("Ricoh"), and a tortious interference with prospective advantage claim against Advance Business Systems ("Advance"). Defendants move to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, defendants' motion is granted.

**BACKGROUND**

For purposes of this motion, the facts as alleged in Genesis's complaint are assumed to be true. Although the parties have submitted affidavits and exhibits with their briefs, on a motion to dismiss, a court's consideration is "limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). Accordingly, I do not rely on the parties' affidavits and exhibits for purposes of this motion, except for certain documents incorporated in the complaint by reference.

**A.   The Facts**

    **1.   The Parties**

Genesis is a Maryland corporation that sells and services office equipment. (Compl. ¶ 1). Savin and Ricoh are corporations that supply office equipment to dealers, including, formerly, Genesis. (Id. ¶ 2). Gestetner Corp. ("Gestetner") also formerly supplied office equipment to Genesis, but it merged into Savin on April 1, 1998. (Id. Ex. A-1). Although Savin and Ricoh are separate corporations, key officers in Savin also hold "vital positions" at Ricoh. (Id. ¶ 22).

Advance is a Maryland corporation that sells and services office equipment supplied by Savin and Ricoh. (Id. ¶ 3).

### 2.  **The Genesis-Savin Relationship**

Genesis was a dealer for Gestetner for over fifteen years. (Id. ¶ 5). On June 23, 1998, after the Gestetner-Savin merger, Savin notified Genesis by letter that it would no longer supply Genesis with Gestetner products. (Id. ¶ 6, Ex. A-1). After Genesis threatened legal action (see id. Ex. A-2), Savin "decided to refrain from acting" and met with Genesis (id. ¶ 7). Genesis and Savin reached an agreement, which was memorialized in a letter dated January 26, 1999. (See id. Ex. B).

On December 12, 2002, Genesis and Savin entered a new Dealer Agreement (the "Savin Agreement"). (Id. Ex. C; Weyman Aff., Ex. C).[1] The Savin Agreement appointed Genesis as an authorized retailer of Gestetner brand products in certain territories, including Baltimore, Maryland. (Compl. Ex. C). But "[s]uch appointment [was] not exclusive," and the Savin Agreement allowed Savin "in its sole discretion, at any time and without cause or notice, . . . [to] appoint other retailers . . . in all or a portion of the Territory. Any such additional appointments shall not operate as a termination or cancellation of this Agreement." (Id.).

The Savin Agreement expired, by its terms, on October 31, 2003, but provided that the parties "may agree in writing to continue their relationship on a month-to-month basis." (Id. ¶

---

[1] A complete copy of the Savin Agreement is not included with the complaint, but is provided as Exhibit C to the Affidavit of Mark L. Weyman in Support of Defendants' Motion to Dismiss.

13).  In such circumstances, Section 9(e) of the Savin Agreement allowed either party to terminate the relationship on written notice.  (Id.).  By October 31, 2003, Genesis and Savin had not entered into a written agreement to continue the relationship on a month-to-month basis (id. ¶ 14), but they also did not terminate the relationship.  Hence, they continued to do business together, which "establish[ed] a new contract without limitation" (id. ¶ 15).

On March 24, 2004, Savin notified Genesis by letter that the Savin Agreement "will expire (effective after 60 days from this notification) by its own terms pursuant to Section 9(e) of the Dealer Agreement."  (Id. Ex. D).

### 3. The Genesis-Ricoh Relationship

In September 2002, Genesis and Ricoh entered an "Office Products Retail Dealer Sales Agreement" (the "Ricoh Agreement").  (Id. Ex. E; Weyman Aff., Ex. B).[2]  The Ricoh Agreement expired, by its terms, on March 31, 2004.  Section 15 of the Ricoh Agreement contains the termination rights provisions and states in relevant part:

> In the event this Agreement shall have
> expired by its terms on March 31, 2004 but
> neither RICOH nor Dealer shall have notified
> the other in writing of their intention to
> discontinue the relationship, then, in such
> event this Agreement shall automatically
> continue in full force and effect on a
> month-to-month basis . . . until . . .

---

[2]    A complete copy of the Ricoh Agreement is not included with the complaint, but is provided as Exhibit B to the Affidavit of Mark L. Weyman in Support of Defendants' Motion to Dismiss.

>      (c) The provision, by RICOH, of at least
>      sixty (60) days prior written notice, to the
>      effect that RICOH . . . shall allow the
>      existing Agreement (as extended) to expire on
>      the last day of the second (2d) month
>      immediately following the month in which the
>      RICOH notice is provided.

(Weyman Aff., Ex. B at 10).  On April 30, 2004, Ricoh notified Genesis by letter, pursuant to Section 15 of the Ricoh Agreement, that "it will not offer your dealership a renewal contract and, effective [June 30, 2004,] will allow the Agreement to expire." (Compl. Ex. F).

### 4.   Advance

As early as July 24, 1998, Genesis was aware that Advance was also selling Gestetner products in Baltimore.  (Id. Ex. A-2).  Sometime in 1999, Advance, seeking "to acquire the Baltimore territory from Genesis," made agreements with Savin and Ricoh to that end.  (Id. ¶ 33; see also id. ¶ 39).  After Savin and Ricoh ended their business relationships with Genesis in 2004, they designated Advance as the "sole dealer" in Baltimore, thereby "hand[ing] over all the business built up by Genesis over the course of two decades."  (Id. ¶ 28).

### B.   Procedural History

Genesis previously filed an action against defendants in a Maryland Circuit Court, but the suit was dismissed without prejudice to re-filing in New York pursuant to a forum selection clause in the Savin and Ricoh Agreements.  (Id. ¶ 4).  On May 9, 2007, Genesis filed a complaint in this Court, asserting two claims of breach of contract against Savin and Ricoh and a claim

of tortious interference with prospective advantage against Advance.  Defendants move to dismiss the complaint for failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  Genesis opposes the motion and simultaneously moves for summary judgment.

## DISCUSSION

### A.  Pleading Standards

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996); see Erickson v. Pardus, 127 S. Ct. 2197, 2199 (2007) (per curiam); Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

In its recent decision in Bell Atlantic Corp., the Supreme Court announced the "retirement" of the oft-quoted "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 45-47 (1957), adopting in its place a "plausibility" requirement.  Bell Atl. Corp., 127 S. Ct. at 1969.  As interpreted by the Second Circuit, Bell Atlantic Corp. did not announce a "universal standard of heightened fact pleading, but . . . instead requir[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  The question is whether the pleading alleges "'enough facts to

-6-

state a claim for relief that is plausible on its face.'"  Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting Bell Atl. Corp., 127 S. Ct. at 1974).

In deciding a motion to dismiss, a court may consider the pleadings and attached exhibits, statements, or documents incorporated by reference, and matters subject to judicial notice.  See Prentice v. Apfel, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)).  "'[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations'" and will not defeat the motion.  Gavish v. Revlon, Inc., No. 00 Civ. 7291 (SHS), 2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004) (quoting Citibank, N.A. v. Itochu Int'l, Inc., No. 01 Civ. 6007 (GBD), 2003 WL 1797847, at *1 (S.D.N.Y. Apr. 4, 2003)).

**B.   Breach of Contract Claims**

The sole issue here is whether Savin and Ricoh breached their respective contracts with Genesis.  Genesis's complaint alleges that Savin and Ricoh breached by terminating its dealership to make Advance the sole dealer in Baltimore.  (Compl. ¶¶ 18, 27, 28).  Savin and Ricoh did enter contracts with Genesis, and they did subsequently end their business relationships with Genesis.  But the terminations did not constitute a breach of contract because the Agreements gave them the right to terminate, and Savin and Roth followed the procedures for termination set out in the Agreements.

Although both the Savin and Ricoh Agreements had expired, the parties continued their relationships on a month-to-month basis either automatically, as provided under the Ricoh Agreement, or by default, as established through course of performance between Genesis and Savin.  Both contracts specified how one party could unilaterally terminate the agreement during a month-to-month relationship.  Pursuant to Section 9(e) of the Savin Agreement, Savin notified Genesis by letter that it was terminating the relationship after 60 days (even though the agreement required only a 30-day notice).  Likewise, pursuant to Section 15 of the Ricoh Agreement, Ricoh provided notice that it was terminating the relationship after 60 days.  Thus, both Savin and Ricoh satisfied their contractual obligations to Genesis. DCMR v. Trident Precision Mfg., 317 F. Supp. 2d 220 (W.D.N.Y. 2004), aff'd, 110 Fed. Appx. 205 (2d Cir. 2004) (where parties had right to terminate agreement upon thirty days notice for any reason or no reason, the choice to exercise that right does not amount to breach of contract).

Genesis makes two arguments that Savin and Ricoh nevertheless breached.  First, it argues that before the expiration of their contracts, Savin and Ricoh formed an intent to breach by planning to give Advance an exclusive dealership in Baltimore.  (Pl. Mem. at 3).  This argument is rejected because an intent to breach is not a breach.  A breach of contract claim is based on an act, not a mental state.  Planning to give Advance a sole dealership in Baltimore is also not a breach of the

contracts that Genesis entered with Savin and Ricoh because the sole dealership was given <u>after</u> Savin and Ricoh concluded their contractual obligations to Genesis.  Indeed, Genesis does not cite to any provision that limits to whom Savin or Ricoh may give sole dealerships after the expiration of their agreements.

Second, while Genesis concedes that "the professional relationship may end at the hands of either party," it argues that "the key exception is when it ends due to Defendants appointing another retailer in the territory and 'tossing' one already there with established customers."  (Pl. Mem. at 6).  This argument is also rejected because this "exception" to which Genesis refers is not mentioned in either agreement.  Once the agreements had expired, Savin and Ricoh did not owe Genesis any further obligations.  They were not precluded, by contract or otherwise, from discontinuing their business with Genesis and electing to do business instead with Advance on an exclusive basis.  That Genesis no longer has Gestetner products to sell in Baltimore is not a result of a breach of contract, but the expiration of the contracts it had with Savin and Ricoh.  Accordingly, the motion to dismiss the breach of contract claims against Savin and Ricoh is granted.

## C.     **Tortious Interference with Prospective Advantage**

Under Maryland law,[3] to recover for tortious interference with prospective advantage (now known as tortious interference with business relationships), "the defendant's conduct must be independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." Spengler v. Sears, Roebuck & Co., 878 A.2d 628, 642 (Md. Ct. Spec. App. 2005).  In other words, the "defendant's conduct in interfering with contract or business relations [must be] accomplished through improper means."  Id. (emphasis in original).  In Maryland, "improper means" has been limited to acts of "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith"; Maryland courts have "declined to recognize that there exists such a wrongful act when there is merely a breach of contract that has an incidental effect on the plaintiff's business relations with third parties."  Id.

In its complaint, Genesis does not allege any "improper means" on the part of Advance that would give rise to a tortious interference claim.  Genesis alleges only -- without any

---

[3]     Under New York choice-of-law principles, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.  Antaeus Enters., Inc. v. SD-Barn Real Estate, L.L.C., 480 F. Supp. 2d 734, 742 (S.D.N.Y. 2007). Because the alleged tortious interference occurred in Maryland, I apply Maryland law here.

supporting factual allegations -- that "Advance sought to acquire the Baltimore territory from Genesis and entered agreement(s) with [Savin] and/or Ricoh to that end." (Compl. ¶ 33). This allegation is insufficient because it fails to allege that Advance interfered with its business relations with Savin and Ricoh through improper means. Seeking to oust Genesis from the Baltimore territory or entering an agreement for that purpose are not "improper means" that trigger a claim for tortious interference with business relationships. Accordingly, defendants' motion to dismiss this claim is granted.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint is granted. The complaint is dismissed, with prejudice and with costs, but without attorneys' fees. Genesis's cross motion for summary judgment is denied as moot. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

Dated: New York, New York
February 5, 2008

DENNY CHIN
United States District Judge